

FILED
Apr 08 2010, 2:20 pm

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT
Robert J. Hill
Public Defender of Marion County

Katherine Cornelius
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Matthew Whitmire
Deputy Attorney General
Indianapolis, Indiana

---

# In the
# Indiana Supreme Court

No. 49S00-0803-CR-147

JEFFREY TREADWAY,

*Appellant (Plaintiff below),*

v.

STATE OF INDIANA,

*Appellee (Defendant below).*

Appeal from the Marion Superior Court, Criminal Division 5, No. 49G05-0511-MR-188188
The Honorable Grant W. Hawkins, Judge

On Direct Appeal

**April 8, 2010**

**Rucker, Justice.**

**Case Summary**

After a trial by jury Jeffrey Treadway was found guilty of murder, felony murder, robbery, and battery. Alleging two statutory aggravating circumstances, the State sought life imprisonment without parole. The jury recommended life imprisonment and the trial court sentenced Treadway accordingly. Rephrased and reordered Treadway raises the following issues: (1) did the trial court err in failing to dismiss the State's request for life imprisonment without parole; (2) did the trial court abuse its discretion in failing to grant a mistrial; (3) did the trial court abuse its discretion by admitting into evidence the testimony of two inmate witnesses; (4) did the trial court err in admitting into evidence Treadway's pretrial statement; (5) did the trial court err in instructing the jury; (5) was the evidence sufficient to sustain the verdicts; (6) did the State prove the existence of the statutory aggravators beyond a reasonable doubt; (7) is the trial court's sentencing order inadequate; and (8) is the life without parole sentence inappropriate based on Treadway's character and the nature of the offense. We affirm the judgment of the trial court.

**Facts and Procedural History**

In the late evening hours of October 15, 2005, Treadway knocked on the door of a home occupied by an elderly couple, eighty-two-year-old Donald Carroll and his eighty-year-old wife Betty Carroll. Two years earlier Treadway had performed minor yard work for the couple for which Mrs. Carroll paid him $25.00. When Mr. Carroll answered the door Treadway struck him in the head repeatedly with a brick and took his wallet. As Mrs. Carroll attempted to intervene, Treadway swung at her with the brick and pushed her onto a couch causing injuries to her arms and hands. In response to Treadway's demand for money Mrs. Carroll gave Treadway $200.00 and he fled the scene. Mrs. Carroll called 9-1-1. After the police arrived Mr. Carroll was taken to Methodist Hospital where he died as a result of blunt force injury to the head. Tr. at 1650.[1] When questioned by the police Mrs. Carroll gave a description of the attacker, noting that he had

---

[1] In this opinion we refer to the trial transcript as "Tr." and the transcript containing trial exhibits as "Ex. Tr."

unkempt gray hair, a full beard, vivid eyes, wore a blue plaid jacket, that his name was "Jeff" and that he had done yard work for her in the past.

A few days later with the assistance of a sketch artist, Mrs. Carroll created a picture of Treadway that was thereafter released to the news media. On October 23, 2005, Treadway was arrested in the state of Minnesota on an unrelated charge and was questioned by officers of the Fairmont Police Department. During questioning Treadway made references of being wanted in Indianapolis and that he was "going for life." Ex. Tr. at 127.

The State charged Treadway with murder, felony murder, robbery as a Class A felony, and battery as a Class C felony. Alleging he committed the murder by intentionally killing the victim while committing or attempting to commit robbery – Indiana Code section 35-50-2-9 (b)(1)(G) – and that he committed the murder while on parole – Indiana Code section 35-50-2-9(b)(9)(D) – the State also sought life imprisonment without parole. After a jury trial Treadway was convicted as charged. At the penalty phase of trial, the jury recommended life imprisonment for the murder conviction. And following a sentencing hearing the trial court sentenced Treadway consistent with the jury's recommendation. Also, the trial court entered judgment of conviction on the robbery as a Class B rather than a Class A felony and sentenced Treadway to twenty years imprisonment to run consecutive to the life sentence. For the battery conviction the trial court imposed a sentence of eight years to run concurrent with the life sentence. Apparently because of double jeopardy concerns, the trial court merged the felony murder conviction with the murder conviction and entered no sentence thereon. Treadway seeks review. Pursuant to Indiana Appellate Rule 4(A)(1)(a) this Court has mandatory and exclusive jurisdiction over this appeal. Additional relevant facts are set forth below where necessary.

**Discussion**

**I.**

*Motion to Dismiss*

Prior to trial Treadway filed a motion to dismiss the State's request for life imprisonment without parole, which the trial court denied. Correctly noting that a sentence of life without parole is imposed under the same standards and is subject to the same requirements as a capital sentence, see Ajabu v. State, 693 N.E.2d 921, 936 (Ind. 1998), Treadway contends the trial court erred in denying his motion because Indiana's death penalty statute is unconstitutional under both the United States Constitution as interpreted by Apprendi v. New Jersey, 530 U.S. 466 (2000) and Ring v. Arizona, 536 U.S. 584 (2002); and Article I, Section 19 of the Indiana Constitution.[2] In support of his contention, Treadway advances five arguments, each of which this Court has previously rejected: (1) the statute allows for the death sentence in the absence of a jury finding that aggravators outweigh the mitigators beyond a reasonable doubt (rejected in Ritchie v. State, 809 N.E.2d 258, 264-68 (Ind. 2004), reh'g denied, cert. denied; and State v. Barker, 809 N.E.2d 312, 314-15 (Ind. 2004), reh'g and remand granted, 826 N.E.2d 648 (Ind. 2005), cert. denied);[3] (2) the statute allows a judge to impose a sentence of life without parole without a jury's unanimous recommendation (rejected in Wilkes v. State, 917 N.E.2d 675, 687-89 (Ind. 2009), reh'g denied, 2010 Ind. LEXIS 199 (Ind., Mar. 16, 2010) (holding where a jury finds the aggravating circumstance(s) exists beyond a reasonable doubt the requirements of Apprendi and Ring for establishing eligibility for a penalty under Indiana Code section 35-50-2-9 are satisfied, and if the jury cannot reach a unanimous sentencing recommendation the trial court may impose a sentence under the statute so long as it independently finds the aggravating circumstances)); (3) the statute calls for the use of special verdict forms (rejected in Wilkes, 917 N.E.2d at 686-87 (holding that although Indiana Trial Rule 49 abolished special verdict forms,

---

[2] Article I, Section 19 provides, "In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

[3] The author of this opinion has previously dissented on this issue but recognizes that the law is now settled; and that the doctrine of stare decisis prevails. The weighing of aggravating and mitigating circumstances is not a factual determination which must be proved beyond a reasonable doubt. See Kubsch v. State, 866 N.E.2d 726, 738-39 (Ind. 2007) (relying on Kansas v. Marsh, 548 U.S. 163, 172-73 (2006)) (holding that the United States Constitution does not require aggravating circumstances to outweigh mitigating circumstances beyond a reasonable doubt).

use of the form is necessitated by the Sixth Amendment to the United States Constitution as interpreted by Apprendi and Ring)); (4) the statute permits, but does not require, the consideration of mitigating circumstances (rejected in Wisehart v. State, 693 N.E.2d 23, 54 (Ind. 1998), reh'g denied, cert. denied, (citing Matheney v. State, 688 N.E.2d 883, 907 (Ind. 1997), cert. denied)); and (5) that the statute diminishes the responsibility of the jury in making a sentencing determination under the statute (rejected in Barker, 809 N.E.2d at 317-318).  We decline to revisit these issues.  The trial court did not err in denying Treadway's motion to dismiss.

## II.

### *Failure to Grant Mistrial*

On three occasions during the course of trial and for different reasons, Treadway moved for a mistrial.  The trial court denied the motions and Treadway claims error.  Granting or denying a motion for a mistrial is within the discretion of the trial court.  McManus v. State, 814 N.E.2d 253, 260 (Ind. 2004).  We afford great deference to the trial court's decision, and review the decision solely for abuse of discretion.  Id.; Lucio v. State, 907 N.E.2d 1008, 1010 (Ind. 2009).

*A.    Hearsay Testimony*

For his first mistrial motion, the essential facts are these.  Prior to trial Treadway filed a motion in limine to preclude on hearsay grounds any testimony from Steven Carroll – Mrs. Carroll's stepson – concerning what Mrs. Carroll told him about her attacker.  The State acknowledged that the testimony would be hearsay, but noted an exception under Ind. Evidence Rule 801(d)(1)(C).[4]  Treadway countered that the Rule anticipates that the witness – here Mrs. Carroll – must testify first and be subject to cross-examination.  Responding to the State's assertion that it would have to call Mrs. Carroll out of sequence but would corroborate Steven's testimony with Mrs. Carroll's testimony, the trial court denied Treadway's motion in limine.

---

[4] Although not actually an exception, the Rule provides in relevant part: "A statement is not hearsay if: . . . The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made shortly after perceiving the person . . . ."

5

The record shows that on the night of the murder Mrs. Carroll spoke with Steven at the hospital where his father had been taken. At trial and over Treadway's objection, Steven testified that Mrs. Carroll told him that her attacker "was Jeff who had done yard work for them in the past." Tr. at 1153. She also said that "he had long hair, kind of wild looking and reminded her of Charlton Heston in the movie where he played Moses parting the water and that he had very vivid eyes, very standout rememberable eyes." Tr. at 1156. When Mrs. Carroll later took the stand she identified the person who attacked her and her husband as "Jeff," Tr. at 1455, and testified in part that "he had a beard and he had long hair and I thought he looked like, . . . Heston in the movie Moses." Tr. at 1458. She further testified, " . . . and what I remember was his eyes and I had seen his eyes looking and shifting around when he worked at our house and then it struck me, that's Jeff. Then I knew it was him." Tr. at 1461.

At the close of the State's case in chief, Treadway moved to "strike the testimony of Mr. Steven Carroll, admonish the jury to disregard his testimony and ask[ed] for a limiting instruction." Tr. at 1894. He went on to add, "I think the only adequate remedy is a mistrial." Id. The trial court denied the motions and refused to order a mistrial. In this appeal Treadway phrases his contention as "[t]he trial judge erred in failing to declare a mistrial when Mrs. Carroll was not able to confirm the description testified to earlier by her son." Br. of Appellant at 15. However Treadway's argument in support of this contention is rather difficult to follow. He complains for example that Mrs. Carroll was not available for cross-examination because she could not remember some of the details of her conversation with her stepson and the investigating officers. But the record shows that on direct examination Mrs. Carroll testified extensively about the events occurring on the night of the attack and was unequivocal in her description of the attacker. See Tr. at 1442-1480. And on cross-examination Treadway never asked Mrs. Carroll about the description of the attacker and never asked about the conversation she had with her stepson, Steven. See Tr. at 1485-1505. To say that Mrs. Carroll was unavailable for cross-examination is simply not supported by the record. In similar fashion Treadway's complaint that Mrs. Carroll was unable to confirm the description testified to earlier by Steven is also unsupported by the record. As recounted above Mrs. Carroll's testimony on this point is nearly identical to the testimony provided by Steven. We conclude that on this issue the trial court did not abuse its discretion in denying Treadway's motion for mistrial.

6

*B.*      *Jury Separation*

For Treadway's second mistrial motion, the facts are as follows. One of the jurors was a mother who was breastfeeding her child. This necessitated expressing breast milk every five or six hours. During the course of trial the juror had been provided a room adjacent to the jury deliberation room for that purpose. After the close of the guilt phase of trial and shortly after the jury retired to deliberate, the breastfeeding juror went into the adjacent room for approximately twenty minutes. When this information came to the trial court's attention, the jury was called into open court. After the trial court identified the foreperson, the following exchange occurred:

> [Trial Court] Okay, now, what constitutes deliberations is sometimes question-begging. I mean I know that juries from time to time will take time out from considering the issues before them just to save some brainpower and you'll talk about something else. I'm concerned about two things. One, did you continue deliberating about the case while she was gone, and if so did you reach any conclusions while she was gone where she was simply denied input into that conclusion-reaching. Do you understand the two questions?
>
> [Foreperson]   Yes.
>
> [Trial Court]   Um, did deliberations occur in her absence?
>
> [Foreperson]   Discussion. I wouldn't call it deliberation, I would call it discussion.
>
> [Trial Court]   Give me your definition of discussion.
>
> [Foreperson]   It was sharing of opinions only, no, no –
>
> [Trial Court]   Okay, I don't need to know what you're sharing opinions on but were any conclusions reached?
>
> [Foreperson]   No.
>
> [Trial Court]   Okay. Would her presence in that room, in your opinion, have changed the tenor of any discussions you were having?
>
> [Foreperson]   No.

7

> [Trial Court] Okay. Now, everyone else, you've heard what Mr. [Foreperson] told me. Anyone disagree with his description of what went on in [the juror's] absence? Okay, Ms. [Juror] you left at a certain point in the discussions, you came back later. Did you get the feeling you'd been passed by on anything?
>
> [Juror] No.

Tr. at 2146-48. Treadway moved for a mistrial, or in the alternative that the juror be stricken and replaced by an alternate. The trial court denied both motions.

On appeal Treadway has abandoned his claim for replacement of the juror; but rather focuses on the trial court's denial of his motion for mistrial. According to Treadway, "[t]he trial judge erred in failing to declare a mistrial when it was revealed that a juror had been allowed to leave while the remaining jurors continued to share opinions." Br. of Appellant at 8. Treadway cites Follrad v. State, 428 N.E.2d 1201, 1202 (Ind. 1981), and Bales v. State, 275 Ind. 515, 418 N.E.2d 215, 218 (1981), to support his contention that the prosecution bears the burden to prove "beyond a reasonable doubt that separation of the jurors during deliberations[5] did not influence them adversely to the defendant or render them less capable of discharging their duty." Br. of Appellant at 10 (citing Bales, 418 N.E.2d at 218). However, the facts in this case involve a twenty minute separation, unlike the facts in Follrad and Bales, which both involved jurors separating for more than ten hours overnight. See Follrad, 428 N.E.2d at 1201; Bales, 418 N.E.2d at 218.

This case aligns more closely with McDonald v. State, 542 N.E.2d 552, 553 (Ind. 1989) and Stewart v. State, 531 N.E.2d 1146, 1149 (Ind. 1988), which both involved jury separations lasting less than one hour and the excused jurors were not exposed to any prejudicial influence.

---

[5] We observe in passing that it is not at all clear the jury in this case was actually engaged in deliberations. See e.g., Rice v. State, 916 N.E.2d 962, 966 (Ind. Ct. App. 2009) (declaring that this Court has made a distinction between jury discussion and jury deliberation when adopting Jury Rule 20(a)(8)); Weatherspoon v. State, 912 N.E.2d 437, 441 (Ind. Ct. App. 2009), trans. denied, (noting that during discussions the jury and alternate jurors may consider issues of credibility, highlight and discount certain evidence, and narrow and broaden the issues in the same way the jury would in deliberations, but declaring a distinction between the two). In any event because we conclude Treadway is entitled to no relief on this issue, we need not explore the nuances between "shar[ing] opinions" and engaging in deliberations.

In Stewart, one juror was absent from deliberations for five minutes, and the record is silent as to the reason for separation. Stewart, 531 N.E.2d at 1150. This Court held that because the separation was extremely brief and the appellant failed to prove that any juror was exposed to prejudicial influence, there was no reversible error. Id. (citing Drake v. State, 467 N.E.2d 686 (Ind. 1984)). In McDonald, two jurors were excused to smoke in another area of the building during recesses. 542 N.E.2d at 553-554. Although prosecutors, witnesses, and others involved with the trial were present in the area with the excused jurors, this Court held that the appellant failed to point to evidence of prejudicial influence and therefore proved no reversible error. Id.

Here, the jury separated for twenty minutes to give one juror a chance to express breast milk privately. Treadway points to no specific evidence of prejudice resulting from the separation of the jury for twenty minutes. And we cannot say that allowing the jury to continue deliberating after such a brief separation was an abuse of discretion.

*C.      Instructing Jury to Continue Deliberating*

For Treadway's final mistrial motion, these are the essential facts. After approximately six hours of deliberation, the jury sent the trial court a note. The trial court summoned the parties into open court. And although the note is not included in the record, the court read it as follows: "First sentence, the jury has deliberated and has not reached consensus. Second sentence, what does the process require at this point." Tr. at 2158. By agreement of the parties the trial court called the jury into open court and polled them individually on whether "[w]ith more time, do you think you could reach a decision, an agreement, unanimous decision on any of the four counts?" Tr. at 2160. Only one juror responded "yes." Tr. at 2161. The trial court then released the jury back to the jury room and consulted the parties. Arguing there was no way the jury could reach a unanimous verdict even with more time, Treadway moved for mistrial. Implicitly overruling the motion, the trial court noted that it would "give them more time" and would send the court bailiff in "with the instruction that the judge said to please continue deliberating." Tr. at 2163. Treadway responded, "We would object to any instruction, Judge." Id.

On appeal Treadway frames the issue as trial court error "in failing to declare a mistrial . . . when he allowed the bailiff to instruct the deadlocked jury to continue deliberations off the record." Br. of Appellant at 8. As phrased, this issue is waived. As recounted above, Treadway's motion for mistrial was based on his contention that the jury could not reach a unanimous verdict even given more time. His claim here is substantially different from his objection at trial. A party may not add to or change his grounds for objections in the reviewing court. Burton v. State, 526 N.E.2d 1163, 1168 (Ind. 1988). "Any ground not raised at trial is not available on appeal." Id. (citing Johnson v. State, 472 N.E.2d 892, 910 (Ind. 1985)). Therefore, this issue was not properly preserved for review. In similar fashion Treadway did not seek a mistrial based on the trial court's decision to send the bailiff into the jury room with instructions to continue deliberating. Rather, he objected to the trial court giving the jury "any instruction" at all. This issue too is waived. See Burton, 526 N.E.2d at 1168. Thus we address the only issue properly before us, namely: whether the trial court erred by instructing the jury to continue deliberating.

"Under our recently adopted jury rules, Indiana trial courts have greater leeway to 'facilitate and assist jurors in the deliberative process, in order to avoid mistrials.'" Ronco v. State, 862 N.E.2d 257, 259 (Ind. 2007) (quoting Tincher v. Davidson, 762 N.E.2d 1221, 1224 (Ind. 2002)). Jury Rule 28 gives trial courts authority, when the jury advises the court they are at an impasse, to poll the jurors in the presence of counsel and the parties, and to "direct that further proceedings occur as appropriate." Ind. Jury R. 28. Even before the adoption of our jury rules, this Court has held on several occasions that there is no reversible error where the trial court, after receiving a note from the jury indicating deadlock, instructs the jury to continue deliberating. See, e.g., Lott v. State, 690 N.E.2d 204, 209-10 (Ind. 1997) (holding that there is no reversible error where the court responds to the jury's report of deadlock, without notifying the parties, by sending the bailiff to instruct the jury to continue deliberating); Nichols v. State, 591 N.E.2d 134, 138 (Ind. 1992) (holding that any error was harmless where the court instructed the jury, without notifying the parties, to keep deliberating in response to the jury's note indicating deadlock); Wine v. State, 539 N.E.2d 932, 935 (Ind. 1989) (holding no reversible error where the court received notice that the jury was deadlocked and without notifying the parties, instructed the jury to continue deliberating for one hour).

Here, the trial court properly called the jury and the parties into open court, polled the jury, then notified the parties of its intent to instruct the jury to continue deliberating before sending the bailiff into the jury room. There is no error on this issue.

## III.

### *Inmate Testimony*

Treadway contends, "[t]he trial court erred in allowing inmates from Wabash Valley Correctional Facility to testify to things they say they heard Mr. Treadway say." Br. of Appellant at 24. This contention is based on the following facts. In 2005 Treadway was confined to the Wabash Valley Correctional Facility serving a two-year sentence for burglary. Also confined at the time were inmates Charles Adams and Donald Huntington. The three became acquainted with each other. Shortly after Treadway's release in October 2005, Adams and Huntington, still incarcerated, watched a television news report about the killing of an elderly Indianapolis man. The report indicated that the man had been beaten with a brick, and included an artist's sketch of the alleged offender. Huntington testified that he recognized the sketch as that of Treadway. In response to the State's question "how did that connect to Jeff Treadway," Tr. at 1172, Huntington testified over Treadway's objection[6] that shortly before Treadway was released from the facility, "[h]e had told me that since they wouldn't give him his $75 gate fee,[7] that when he got out he would use a rock or lock to rob old people. He would start killing people." Tr. at 1173-74. After another question concerning Treadway's remarks, and over Treadway's objection that the question had been "asked and answered," the trial court admonished the jury as follows:

---

[6]At a pretrial hearing on a motion in limine, Treadway retreated from an earlier argument that the challenged inmate statements were inadmissible under Ind. Evidence Rule 404(b) ("Other Crimes, Wrongs, or Acts"). Instead, he argued the statements were inadmissible character evidence under Ind. Evidence Rule 404(a) ("Character evidence not admissible to prove conduct."). See Tr. at 980. During trial and outside the presence of the jury, Treadway also moved to exclude the inmates' statements under Ind. Evidence Rule 403 ("Exclusion of relevant evidence on grounds of prejudice, confusion, or undue delay."). See Tr. at 1061, 1062. The trial court denied the motions. Treadway's trial objection was "based on our previous objection and motion concerning this specific issue," Tr. at 1171, and "the prior motions we've made concerning this issue." Tr. at 1230.

[7] Huntington explained that a "gate fee" is the money inmates usually receive from the State of Indiana upon release from custody. Tr. at 1174.

> Ladies and gentlemen, sometimes statements are admitted for limited purposes. In this case, I'm admitting some statements not to show conduct (inaudible) with the statements, but because these statements are what refreshed his recollection and helped him put a picture with an event. Do you understand what I'm explaining to you. Okay. Show that the objection's overruled, please continue.

Tr. at 1176. The testimony of Charles Adams was similar to that of Huntington. According to Adams sometime in October he watched a news report on television concerning the killing of an elderly Indianapolis man. The report included a sketch of the alleged suspect that Adams connected to Jeffrey Treadway. When asked why he made the connection, Adams testified over objection that close to the time Treadway was released he overheard Treadway say, "I'm glad I'm going to the streets. Out there I can pick up a stick or pick up a piece of wood, pardon me, or pick up a rock and beat old people to get what I want." Tr. at 1232. The trial court again admonished the jury.

At trial Treadway objected to the testimony of the inmates on grounds that it was prejudicial under Ind. Evidence Rule 403, and it was inadmissible character evidence under Ind. Evidence Rule 404(a). See n.6. On appeal, although mentioning that he raised a 404(a) and a 404(b) claim at trial, Treadway does not argue these grounds as trial court error. And he does not at all mention his 403 claim. Instead, Treadway focuses on the admonishment the trial court gave the jury, claims the admonishment was not sufficient, and complains about the way in which the State used the inmate testimony during closing argument. According to Treadway, "the trial judge clearly felt using the testimony to prove Mr. Treadway acted in conformity therewith was inappropriate. The State proceeded to use the information for exactly that prohibited purpose." Br. of Appellant at 27. These claims are waived. Treadway did not object to the trial court's admonishment, and he made no objection to the State's closing argument. Failure to object at trial waives the issue for review unless fundamental error occurred. Hardley v. State, 893 N.E.2d 1140, 1145 (Ind. Ct. App. 2008), trans. granted, aff'd, 905 N.E.2d 399 (Ind. 2009) (citing Groves v. State, 823 N.E.2d 1229, 1232 (Ind. Ct. App. 2005)). Here Treadway makes no claim of fundamental error, and we find none to have occurred.

## IV.

### *Out of Court Statement*

Treadway contends the trial court erred by admitting into evidence his out of court statement given to police officers in the State of Minnesota. According to Treadway the statement was not given knowingly, intelligently and voluntarily.

The record shows that around 4:30 p.m. on October 23, 2005, Treadway, driving a stolen van, led officers of the Fairmont Minnesota Police Department on a high speed chase. The police were investigating a report of a burglary in the area, and the chase came to an end when they used "stop sticks" to immobilize the van. An apparently intoxicated Treadway was arrested and approximately two hours later was given a breathalyzer test that measured .23 BAC. Treadway was eventually transported to the Martin County Jail.[8] Beginning at about 10:30 p.m. that same evening he was questioned by Detective Corey Klanderud who was later joined by Officer Bryan Boltjes. Before questioning began, which was both audio recorded and videotaped, Detective Klanderud read to Treadway a written Miranda advisement.[9] When asked if he understood the advisement, Treadway responded by nodding his head yes. Tr. at 126. When asked if he still wanted to talk to the Detective, "[Treadway] responded all right." Tr. at 127. According to Detective Klanderud, during the course of the ensuing conversation it was his opinion that Treadway understood the questions being asked, his answers were understandable, and although aware that Treadway had been drinking earlier that day, he did not "notice any indication of slurred speech or anything of that nature." Tr. at 129. Investigating a burglary in Minnesota, the officers were unaware that Treadway was a suspect in an Indiana homicide investigation. However, during the course of questioning Treadway made several statements that made the officers suspicious. At various times for example, Treadway responded to questions with remarks such as, "[s]o . . . I don't sit here and tell you about stuff that I've done and what's going on and what's happening and what's going to happen," Ex. Tr. at 331; "[y]ou are going to see that all here pretty soon man," Ex. Tr. at 332; "[b]ut I'm not one to sit here and tell you all about it, you are going to find out here in just a little while." Id.; "You don't know how worse it

---

[8] Fairmont, Minnesota is located in Martin County. Tr. at 111.

[9] See Miranda v. Arizona 384 U.S. 436 (1966).

is going to get for me," Ex. Tr. at 330; "[w]ell ah . . . Indianapolis probably will want to see me," Ex. Tr. at 344; "I'm pretty sure Indiana wants to talk to me," Ex. Tr. at 346; and "I'm going for life man . . . No, I'm going for life," Ex. Tr. at 127. Treadway gave no details about that to which he was referring. During the course of questioning Treadway also asked to use the bathroom, which was initially denied.

At a hearing on a motion to suppress the statement, Treadway argued for exclusion on grounds that it was "obtained without proper (a) <u>Miranda</u> and (b) without voluntary and intelligent waiver of his rights." Tr. at 89. Counsel for Treadway elaborated, "He was intoxicated at the time. There had been a long period of time that he had went without sleep as well as there was a period of time that we believe he could have been under somewhat of duress because of having been in a police chase hours before. He had no shoes, he had not been allowed to go to the restroom." Tr. at 90. After hearing evidence including reviewing the audiotape and the video recording the trial court denied the motion to suppress. In doing so the trial court expressed concerns about evidence that Treadway was under the influence of alcohol and the denial of Treadway's request to use the bathroom. At trial, outside the presence of the jury, a discussion ensued over the admissibility of State's Exhibit 105 and 106 (audiotape and video recording of Treadway's statement) and State's Exhibit 107 (a substantially redacted transcript of State's Exhibit 105). Responding to Treadway's argument the trial court replied, "Show that the defense is again moving to suppress 105, 106, and 107 for reasons stated in the prior hearings on the motions to suppress the statement taken by Detective Klanderud." Tr. at 1675. Treadway also moved to further redact certain portions of Exhibit 107 that contained statements made by Officer Boltjes. The trial court overruled the objection and again denied the motion to suppress. When the State moved to introduce the exhibits at trial, noting "over objections heretofore made," Tr. at 1690, the trial court admitted the exhibits into evidence.[10]

In this appeal, Treadway no longer challenges the propriety of the <u>Miranda</u> advisement given by Detective Klanderud. Instead asserting the trial court "found Mr. Treadway was

---

[10] The record is unclear whether the jury was provided the redacted version of the statement only, or whether the jury listened to and watched the audio tape and video recording. In any event no issue in this regard has been raised on appeal.

intoxicated, tired and denied the use of a restroom," Br. of Appellant at 31, Treadway contends his statement should have been suppressed.

We first observe Treadway employs a fair amount of editorial license in characterizing what the trial court allegedly "found." The record shows that at the motion to suppress hearing, the trial court expressed its concerns with the following observations: "there are two things about that statement I don't like . . . . I'm not saying that they're over any lines but I don't like them. One is, there was good reason for the law enforcement authorities to think he was intoxicated . . . . And the second is [']you can go to the bathroom after we're done talking.['] I just don't like that." Tr. at 228-29. The trial court went on to add, "[defense counsel] mentioned a number of other issues, he was sleepy, he was – he was stressed from the chase, the auto chase. I don't find those troublesome." Tr. at 229. The record makes clear there were no trial court findings as such.

In any event several standards govern our review. First, the State bears the burden of proving beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights, and that the defendant's statement was voluntarily given. Ringo v. State, 736 N.E.2d 1209, 1211 (Ind. 2000). Second, once this standard is met, it is not error to admit the statement. Third, when reviewing a challenge to the trial court's decision to admit the defendant's statement, we do not reweigh the evidence but instead examine the record for substantial probative evidence of voluntariness. Carter v. State, 730 N.E.2d 155, 157 (Ind. 2000).

The first question that must be addressed is whether Treadway waived his Miranda rights. A waiver of Miranda rights occurs when the defendant, after being advised of those rights and acknowledging that he understands them, proceeds to make a statement without taking advantage of those rights. Ringo, 736 N.E.2d at 1211-12. The admissibility of a statement is controlled by determining from the totality of the circumstances whether it was made voluntarily and not induced by violence, threats, or other improper influences that overcame the defendant's free will. Id. at 1212.

15

As recounted above, the evidence at the suppression hearing supports a conclusion beyond a reasonable doubt that Treadway was fully advised of his rights and voluntarily waived them. The State showed that the appropriate Miranda rights were read to Treadway, he acknowledged understanding those rights, and proceeded to talk to the police. The State carried its burden to demonstrate waiver.

Treadway insists however that his statement was nonetheless involuntary because he was tired and intoxicated at the time of the police questioning. It is true that intoxication and lack of sleep may be factors in determining voluntariness. Ringo, 736 N.E.2d at 1213. But these factors are not sufficient of themselves. Instead they are included in the totality of the circumstances that a trial court considers in ruling on whether to admit a statement. Brewer v. State, 646 N.E.2d 1382, 1385 (Ind. 1995). The record shows that at the time Treadway gave his statement he was cogent and lucid. Also, he had not consumed any drugs or alcohol for at least six hours. There was no evidence of threats, violence, promises, or use of improper influences. We therefore conclude the trial court did not err in allowing the statement into evidence.

In a related argument Treadway contends the trial court also erred in not further redacting portions of the transcribed statement that included questions asked by Officer Boltjes. According to Treadway the officer's statements amount to hearsay and therefore should have been excluded. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Ind. Evidence R. 801(c). And hearsay is generally inadmissible. Ind. Evidence Rule 802. However the statements about which Treadway complains were not offered for their truthfulness and thus are not hearsay.[11] Instead the statements were obviously made in order to obtain a response from Treadway. The trial court properly overruled the objection.

---

[11] Treadway objected to specific parts of the statement: "[w]e're talking about page 18, line 19 through page 19, just line 7, so that's a very small portion." Tr. at 1676. They are as follows: "Jeff, you were talking about that earlier man." . . . "This for real thing. That's what you were asking for too earlier when I was back here with you." . . . "yeah you did." . . . "You did." . . . "Okay". . . "What . . . what is it. I mean it's got me concerned now too." Ex. Tr. at 342, 343.

# V.

## *Jury Instructions*

Treadway argues the trial court erroneously instructed the jury in both the guilt and penalty phases of trial. We review a trial court's decision on how to instruct a jury for abuse of discretion. Forte v. State, 759 N.E.2d 206, 209 (Ind. 2001). When evaluating the jury instructions on appeal this Court looks to whether the tendered instructions correctly state the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the proffered instruction is covered by other instructions. Dye v. State, 717 N.E.2d 5, 20 (Ind. 1999), reh'g denied. We will reverse a conviction only if the appellant demonstrates that the instruction error prejudices his substantial rights. Hall v. State, 769 N.E.2d 250, 254 (Ind. Ct. App. 2002).

### A.    *Guilt Phase Instruction*

When settling on final jury instructions for the guilt phase of trial, Treadway objected to the trial court's jury instruction number 24. See Tr. at 1898 (arguing "the instruction tends to indicate that the jury has to reach a verdict and doesn't really suggest that if there is an impasse what they should do and that that would be allowed."). The nearly two-page instruction provided in pertinent part "*After you return a verdict*, you are under no obligation to discuss it, or the reasons for it, with anyone" and "*When you have agreed upon a Verdict(s)*, you will inform the bailiff that you have agreed." Appellant's App. at 262-63 (emphasis added). In its place Treadway tendered his own proposed instruction number 24 which, for the most part, tracked that of the trial court. However in pertinent part it provided, "*If you return a verdict . . . .*" and "*If you have agreed upon* a Verdict . . . ." Appellant's App. at 295-96 (emphasis added). Additionally, Treadway's tendered instruction included the sentence, "If you cannot reach a verdict, please inform the bailiff." Appellant's App. at 296. The trial court denied Treadway's tendered instruction and gave its own instruction instead.

Treadway argues the trial court's instructions invaded the province of the jury to determine the law and facts as required by the Indiana Constitution, Article I, Section 19. Specifically, Treadway argues that the jury instruction impermissibly bound the conscience of

17

the jury to favor reaching a verdict. Treadway correctly cites this Court's decision in Pritchard v. State, 248 Ind. 566, 230 N.E.2d 416, 421 (1967), for the proposition that instructions which bind the conscience of the jury to a particular finding are improper. However Pritchard is distinguishable.

Pritchard involved a jury instruction that required the jury to return a guilty verdict if certain facts were found. Id. We have interpreted Pritchard narrowly. See Taylor v. State, 420 N.E.2d 1231, 1236 (Ind. 1981) (holding that imperative language within an instruction is permissible where the instruction is more general and abstract and refers to material allegations of charges rather than to any specific factual allegation); Loftis v. State, 256 Ind. 417, 269 N.E.2d 746, 747-48 (1971) (holding that instructing the jury that it "should convict the defendants" if all material elements of the charged crime are proved beyond a reasonable doubt did not violate Pritchard). Here, the jury instruction contains no imperative language regarding conviction. Although the instruction may seem to assume that the jury will reach a verdict, we cannot agree that this assumption bound the conscience of the jury.

Even if the portions of the instruction to which Treadway objected implied that the jury must or should reach a verdict, the instruction as a whole sufficiently remedies any error. The tendered instruction included the following:

> As jurors, it is your duty to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest belief or opinion as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Appellant's App. at 262.

The instruction specifically prohibits jurors from surrendering honest opinions for the purpose of reaching a verdict. The whole of the instruction does not, as Treadway argues, make

18

it "appear that [the jury] should come to a verdict when, in some cases, a verdict cannot be reached." Br. of Appellant at 38. The trial court did not err in instructing the jury on this issue.

*B. Penalty Phase Instruction*

*(1) The "on parole" aggravator*

Treadway complains the trial court erred in instructing the jury on the parole aggravator. Specifically, he contends that the jury was allowed to find that a sentence of life without parole was appropriate even where the murder was not intentional.

A sentence of life without parole is subject to the same statutory standards and requirements as the death penalty. Cooper v. State, 854 N.E.2d. 831, 838 (Ind. 2006); Dumas v. State, 803 N.E.2d 1113, 1120 (Ind. 2004). Under the death penalty statute, following the completion of the guilt-determination phase of trial and the rendering of the jury's verdict, the trial court reconvenes the jury for the penalty phase. Cooper, 854 N.E.2d at 838. As with a death sentence, "the jury may recommend . . . life imprisonment without parole" only if it finds: "(1) the state has proved beyond a reasonable doubt that at least one (1) of the aggravating circumstances listed in subsection (b) exists; and (2) any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances." Ind. Code § 35-50-2-9(e), (l).

In this case the State sought life without parole based on two aggravating circumstances: murder by intentionally killing the victim while committing or attempting to commit robbery, Indiana Code section 35-50-2-9(b)(1)(G), and murder while on parole, Indiana Code section 35-50-2-9(b)(9)(D). The challenged Instruction provides in pertinent part:

> The State may seek to have a person sentenced to life imprisonment without parole for murder by alleging . . . the existence of at least one (1) of the aggravating circumstances listed in Indiana Code Section 35-50-2-9(b).
> In this case, the State of Indiana has alleged two aggravating circumstances:
> 1. The Defendant committed the murder by intentionally killing the victim while committing or attempting to commit a robbery.
> 2. The Defendant committed the murder charged in Count 2 while on parole.

Appellant's App. at 266. Treadway contends that paragraph two of the instruction should have included a requirement that the State prove that the murder was committed intentionally while on parole. According to Treadway the instruction as tendered allowed the jury to find that Treadway did not commit intentional killing but still find him eligible for life without parole.

We observe that implicit in Treadway's contention is that eligibility for life without parole is permissible only where a murder is intentionally committed. However, the (b)(9)(D) statutory aggravator – "The defendant was: . . . on parole; at the time the murder was committed" – by its express terms does not require an intentional killing. In any event, the jury in this case twice determined that Treadway had killed intentionally – its guilt phase verdict was to a charge of intentional murder, and its finding on the first aggravator encompassed intentional murder as well.[12] Thus even assuming, which we do not, that the trial court's tendered instruction was erroneous, the error is harmless.

*(2) Jury "Recommendation"*

If the jury determines that a sentence of death or life without parole is appropriate, then "the jury shall recommend to the court" the appropriate penalty if any, and "[i]f the jury reaches a sentencing recommendation, the court shall sentence the defendant accordingly." Ind. Code § 35-50-2-9(e). Citing Caldwell v. Mississippi, 472 U.S. 320 (1985), Treadway complains the trial

---

[12] The jury's verdict provided:

> We, the Jury, find that the State has proven beyond a reasonable doubt that the defendant, Jeffrey Treadway, committed an intentional killing in the commission, or attempted commission, of a robbery. We have considered the mitigating factors listed in Indiana Code Section 35-50-2-9(c) and the mitigating factors offered during the entire trial, and find the aggravating factors do outweigh the mitigating factors and the defendant, Jeffrey Treadway, should be sentenced to life imprisonment without the possibility of parole.

Tr. at 2346-47, Appellant's App. at 281.

court erred in reading an instruction to the jury that included the "recommend" language because it led the jury to believe that the final determination rests elsewhere. [13]

In Caldwell the United States Supreme Court held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere . . . ." Id. at 328. The prosecutor in Caldwell urged the jurors to view themselves as "taking only a preliminary step toward the actual determination of the appropriateness of death – a determination which would eventually be made by others and for which the jury was not responsible." Id. at 336. The Court declared, "one can easily imagine that in a case in which the jury is divided on the proper sentence, the presence of appellate review could effectively be used as an argument for why those jurors who are reluctant to invoke the death sentence should nevertheless give in." Id. at 333. However the Court clarified its holding in Romano v. Oklahoma, 512 U.S. 1 (1994). In that case the defendant was found guilty of murder, and during the subsequent penalty phase, the prosecution introduced evidence of a previous conviction and death sentence. The defendant argued the admission of the prior death sentence undermined the jury's sense of responsibility for determining the death penalty in violation of the Eighth Amendment. Rejecting this claim the Court held:

> [W]e have since read Caldwell as relevant only to certain types of comment – those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision. Thus, to establish a Caldwell violation, a defendant necessarily must show

---

[13] The instruction provided:
> You are to consider both aggravating and mitigating circumstances and recommend whether life without parole should be imposed. You may consider all the evidence introduced during this entire trial. If the State failed to prove beyond a reasonable doubt the existence of at least one (1) aggravating circumstance, you shall not recommend life without parole. If the State did prove beyond a reasonable doubt the existence of at least one (1) aggravating circumstance, and you further find that such aggravating circumstance(s) outweighs any mitigating circumstance(s), you may recommend that life without parole be imposed.

Appellant's App. at 275.

> that the remarks to the jury *improperly described the role assigned to the jury by local law.*

Romano, 512 U.S. at 9 (emphasis added) (internal quotations and citations omitted). We first observe that although containing "recommends" as a description of the jury's function, the statute dictates that the jury decides the sentence, and only if the jury is unable to reach a recommendation is the trial court authorized to decide the sentence. Stroud v. State, 809 N.E.2d 274, 287 (Ind. 2004) ("Under the new statute . . . there is only one sentencing determination, which is made by the jury, and the judge must apply the jury's determination."). In any event, merely referring to the jury's determination as a "recommendation" – the term used in the statute – did not run afoul of Caldwell because there was no intimation to the jury that its recommendation was "only a preliminary step" and no suggestion that the jury was "not responsible" for the ultimate sentence. We find no error on this issue.

## VI.

### *Sufficiency of the Evidence*

Under this heading Treadway makes three claims. He first contends the evidence is insufficient to sustain any of his convictions. More precisely he argues the State failed to prove the identity of the person that attacked the Carrolls and thus by implication failed to prove that he engaged in any criminal conduct. In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. Soward v. State, 716 N.E.2d 423, 425 (Ind. 1999). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict, and we will affirm the convictions if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. Kelly v. State, 719 N.E.2d 391, 394 (Ind. 1999).

On the night her husband was murdered, Mrs. Carroll spoke with two different officers from the Indianapolis Metropolitan Police Department: Officer Heidi Wise and Detective Mark Gullion. Wise testified among other things that she was the first officer on the scene and spoke with Mrs. Carroll who told her "the subject was a white male with gray hair, a salt and pepper beard and a plaid jacket." Tr. at 1086. And that "she thought she recognized him, she couldn't

at the time place where she knew him but she knew him from somewhere." Tr. at 1088. Detective Gullion testified, among other things, that he arrived on the scene after Officer Wise; and at that time Mrs. Carroll told him that her attacker "looked like Jeff, his eyes, did yard work for them . . . ." Tr. at 1719. As recounted earlier in this opinion, on the night of the attack Mrs. Carroll also spoke with her stepson Steven. He testified among other things, that Mrs. Carroll told him that her attacker "was Jeff who had done yard work for them in the past." She also said that "he had long hair, kind of wild looking and reminded her of Charlton Heston in the movie where he played Moses parting the water and that he had very vivid eyes, very standout rememberable eyes." Tr. at 1155-1156. At trial Mrs. Carroll testified that the person who attacked her and her husband was named "Jeff," Tr. at 1455, and that "he had a beard and he had long hair and I thought he looked like Heston in the movie Moses." Tr. at 1458. She further testified, "and what I remember was his eyes and I had seen his eyes looking and shifting around when he worked at our house and then it struck me, that's Jeff. Then I knew it was him." Tr. at 1461. Also, at trial Mrs. Carroll identified the artist's sketch of Treadway that had been previously introduced as an exhibit, Tr. at 1480; Ex. Tr. at 178, and pointed Treadway out for the jury. Tr. at 1455, 1456. In sum the State presented an eyewitness who identified Treadway in court, made a sketch of Treadway shortly after the murder, and described Treadway to at least three people shortly after the attack. Contrary to Treadway's claim, the evidence was sufficient to prove that Treadway was the person that attacked Mr. and Mrs. Carroll.

Treadway also complains the evidence was insufficient to sustain the battery conviction because "[t]he State failed to prove either serious bodily injury or was committed by means of a deadly weapon." Br. of Appellant at 41. The serious bodily injury assertion lacks merit. Indiana Code section 35-42-2-1 provides in relevant part: "A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However the offense is: . . . a Class C felony if it results in serious bodily injury to any other person *or* if it is committed by means of a deadly weapon." (emphasis added). In this case the State charged Treadway with Class C felony battery of Mrs. Carroll based only on the deadly weapon provision of the statute, and alleging that the brick was a deadly weapon. See Appellant's App. at 58. With respect to this charge Treadway seems to concede that the

23

brick was a deadly weapon and that the attacker was in possession of a brick during the attack. He argues however "the brick was not used against Mrs. Carroll." Br. of Appellant at 42.

Treadway relies heavily on the fact that during her trial testimony, Mrs. Carroll could not remember whether Treadway struck her with a brick during the attack. However, Officer Wise testified without objection that Mrs. Carroll told her that Treadway "approached her with a brick in his hand and starting swinging it at her. At that time Ms. Carroll stated she attempted to defend herself and received a few cuts on her forearms from the brick." Tr. at 1082. Officer Wise also observed scratches on Mrs. Carroll's forearm. Tr. at 1083. Officer Gullion testified without objection that Mrs. Carroll "told me that she had been struck with a brick. I noticed that she had cuts on her left arm." Tr. at 1719. To the extent that Mrs. Carroll's testimony was at odds with the testimony of the officers, it is within the province of the jury alone to weigh conflicting evidence. Alkhalidi v. State, 753 N.E.2d 625, 627 (Ind. 2001). We conclude the evidence is sufficient to demonstrate Treadway touched Mrs. Carroll in a rude, insolent, or angry manner by means of a deadly weapon.

For his last sufficiency claim Treadway contends the State did not prove the existence of the "on parole" aggravator. Our standard for reviewing this claim is the same as our standard for reviewing the sufficiency of evidence to sustain a conviction. Krempetz v. State, 872 N.E.2d 605, 609 (Ind. 2007). We examine the evidence tending to support the verdict and all reasonable inferences therefrom without weighing the evidence or assessing witness credibility. Id. We determine whether the evidence constitutes substantial evidence of probative value from which a reasonable trier of fact could find the existence of the aggravator beyond a reasonable doubt. Id. (citing Fleenor v. State, 622 N.E.2d 140, 151 (Ind. 1993)).

During the penalty phase of trial the State called as a witness Natasha Blanchett, Treadway's parole officer. Blanchett testified that on October 15, 2005, she met with a person who identified himself as Jeffrey Treadway. Tr. at 2188, 2191. Although the parole officer was unable to identify Treadway in court with certainty, she did recall the content of the meeting because a few days later he was on the news as a suspect in a murder investigation. Blanchett kept and maintained a file on Treadway that included his name, date of birth, and social security

number.  Introduced into evidence was a portion of her file - State's Exhibit 113 - titled "Parole Officer's Road Sheet."  Ex. Tr. at 357.  The exhibit revealed, among other things, that a person by the name Jeffrey A. Treadway was sentenced in Marion County on August 26, 2004, for the crime of burglary; that he was released from the Miami Correctional Facility on October 9, 2005; that his parole expired August 25, 2006; and showed a date of birth and social security number. Id.  The date of birth and social security number were the same as those provided by Treadway during questioning by the Minnesota police officers.  Ex. Tr. at 342.[14]

Treadway notes some of the foregoing evidence, but complains it is not enough.  We disagree.  The question of whether Treadway was on parole is for the jury's determination.  In a slightly different context this Court has said, "[i]f the evidence yields logical and reasonable inferences from which the trier of fact may determine it was indeed the defendant who was convicted of felonies twice before, then sufficient connection [between the documentary evidence and other supporting evidence to identify the defendant] has been shown."  Coker v. State, 455 N.E.2d 319, 322 (Ind. 1983) (affirming defendant's habitual offender finding against a challenge that the documentary evidence must include photograph and fingerprints).  This reasoning applies with equal force here.[15]

## VII.

### *Adequacy of the Sentencing Order*

Treadway contends his life without parole sentence is erroneous because the trial court's written sentencing order does not satisfy the requirements set out in Harrison v. State, 644 N.E.2d 1243 (Ind. 1995).  In that case we interpreted the then existing life without parole statute as requiring a trial court's sentencing order to (1) identify each mitigating and aggravating circumstance found; (2) include the specific facts and reasons which led the court to find the

---

[14] Before beginning its presentation of the evidence during the penalty phase of trial, the State moved to "incorporate all of the evidence" introduced during the guilt phase of trial.  Tr. at 2184.

[15] We again emphasize that Treadway's eligibility for life without parole was premised on the State proving beyond a reasonable doubt the existence of at least one statutory aggravating factor.  The jury in this case determined that the State carried its burden with respect to the "intentional murder" aggravator as well as the "parole" aggravator.  Thus, any defect in the parole aggravator has no bearing on Treadway's eligibility for the life without parole sentence.

existence of each circumstance; (3) articulate that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence; and (4) set forth the trial court's personal conclusion that the sentence was appropriate punishment for the offender and crime. Id. at 1262. However, noting the 2002 amendments to the statute governing sentencing in life without parole and death penalty cases, we recently held:

> When a jury makes the final sentencing determination, a Harrison-style order would be out of place. Juries are traditionally not required to provide reasons for their determinations. Any reasoning provided by a trial court's order would necessarily be that of the trial judge, not the jury. Because the final decision belonged to the jury, this reasoning would be unhelpful on appeal and could undermine confidence in the jury's determination. We think it is enough that by entering the sentence recommended by the jury, the trial court has made an independent determination according to the trial rules that there is sufficient evidence to support the jury's decision.

Pittman v. State, 885 N.E.2d 1246, 1254 (Ind. 2008). In this case the trial court entered the sentence recommended by the jury. Nothing more was required.

## VIII.
### *Review of Sentence*

For his final claim Treadway seeks revision of his life without parole sentence to a term of years. Article VII, Section 4 of the Indiana Constitution provides, "[t]he Supreme Court shall have, in all appeals of criminal cases, the power to . . . review and revise the sentence imposed." Our rules authorize revision of a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "[A] defendant must persuade the appellate court that his or her sentence has met this inappropriateness standard of review." Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Concerning the nature of the offense Treadway argues this crime "was not any more unusual or horrific than other homicides which happen during the course of a burglary." Br. of

Appellant at 46. As we see it, bludgeoning to death a defenseless eighty-two-year-old man in the commission of robbery is horrific and brutal. As for the character of the offender, Treadway concedes that he has an extensive criminal history. He argues however, that his prior history "does not show a proclivity for violence." Id. Treadway, who was forty-six years old at the time of the attack, is certainly correct about the extensiveness of his criminal record that began when he was a juvenile and includes a string of offenses and incarcerations. Treadway's criminal conduct has increased in seriousness over the years from alcohol and substance offenses to burglaries, thefts, and two convictions for aggravated assault. See Br. of Appellee at 50-51; Tr. at 2375. Treadway has been offered numerous opportunities to reform, including probation and parole leniency, but has resumed his criminal activity at every step. We are persuaded that neither the nature of the crimes Treadway committed nor his character renders his sentence inappropriate.

## Conclusion

We affirm the judgment of the trial court.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.