Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**STANLEY F. WRUBLE III**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIE AMBROS NORMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1301-CR-13 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause No. 71D01-1207-FD-694

**September 12, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SULLIVAN, Senior Judge**

After a bench trial, Willie Ambros Norman was convicted of Class D felony attempt to acquire possession of a legend drug by fraud, deceit, misrepresentation, or subterfuge. He now appeals, contending that the evidence is insufficient to sustain his conviction and that the trial court's reference to his prior criminal history constitutes fundamental error. We affirm.

On July 28, 2012, Mary Dennis, a pharmacist at the Kmart store in Mishawaka, received a call from a woman who claimed to be from Dr. Jose Lim's office and said she was calling in a prescription for 120 tablets of extra strength Vicodin for Willie Norman.

Because of the quantity of Vicodin requested, Dennis called Dr. Lim's office to verify the prescription. Nurse Megan Binder answered. Binder told Dennis that she had not called in the prescription and that she was the only person at the office with the authority to call in prescriptions that day. Upon searching for Norman in the office's electronic system, Binder discovered he was not even a patient there. Moreover, the office's narcotics policy was that a patient had to be seen by a doctor and be given a written prescription—the office did not call in narcotics prescriptions.

A little later, Norman called the pharmacy and asked Dennis whether a prescription had been called in for him. Dennis told him it had been called in but would not be ready until early afternoon.

Norman arrived at the pharmacy in the afternoon, asked to pick up the prescription, and provided identification. While entering his identification number in the computer, Dennis called loss prevention officer David Manning, whom she had previously notified of the situation. Norman waited in the pharmacy area while Dennis

2

finished filling the prescription. He then left, however, saying he did not have enough money to pay for it.

Meanwhile, Manning went outside, saw a woman in a black car idling in front of the store, and noted the license plate number. He then called the Mishawaka Police Department. When Officer Ronald Treely arrived a few minutes later, the black car sped off. Around that time, Manning received a call from Dennis that Norman had left without the prescription.

When Norman walked out of the store, Officer Treely called him over and asked about the prescription. Norman looked nervous and stammered that the prescription was for his mother. He then changed his story and said that it was for his back pain and that he had been in a car accident. Norman said he did not know who called in the prescription, but "Lacy" told him to pick it up and had taken him to the store.

The State charged Norman with Class D felony attempt to acquire possession of a legend drug by fraud, deceit, misrepresentation, or subterfuge. Norman waived his right to a jury trial.

On the day of the bench trial, defense counsel informed the trial court that Norman had been taking medication while in jail but noted that it did not appear to affect his understanding of the proceedings. While the court asked Norman about his medication and his understanding of the proceedings, the following colloquy occurred:

> THE COURT: Okay. And you know that you signed a waiver of a jury trial?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: And that's what you want to do is have me make the decision, rather than . . . have a jury here?

3

THE DEFENDANT: Yes, ma'am.
THE COURT: Okay. And, Mr. Norman, I've known you before, right?
    I've sentenced you before?
THE DEFENDANT: Yes, ma'am.
THE COURT: So you're not -- I always like this. It's not your first time at
    the rodeo, right?
THE DEFENDANT: Yes, ma'am.

Tr. pp. 9-10.

Dennis, Binder, Manning, and Officer Treely testified for the State. Norman testified in his own defense. The court found Norman guilty as charged and later sentenced him to eighteen months.

Norman raises three issues on appeal, which we consolidate and restate as: (1) whether the evidence is sufficient to sustain his conviction, and (2) whether the trial court's reference to his prior criminal history constitutes fundamental error.

## I. SUFFICIENCY OF THE EVIDENCE

In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. Treadway v. State, 924 N.E.2d 621, 639 (Ind. 2010). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the judgment. Id. We affirm the conviction if there is probative evidence from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt. Id.

To convict Norman as charged here, the State had to prove beyond a reasonable doubt that he attempted to obtain the Vicodin prescription by fraud, deceit, misrepresentation, or subterfuge. See Ind. Code § 16-42-19-16(1)(A) (1999). "A person attempts to commit a crime when, acting with the culpability required for commission of

the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1(a) (1977).[1]

The facts most favorable to the judgment show that Norman called to confirm a fraudulent Vicodin prescription after it had been called in to the Kmart pharmacy. He then went to the pharmacy and asked for the prescription. Norman waited for it to be filled but then left, saying he did not have enough money. When confronted outside the store, he nervously stammered that the prescription was for his mother but then said it was for him.

Despite this clear evidence, Norman argues that a mistake of fact precludes his conviction because he thought the prescription was legitimate. Indiana Code section 35-41-3-7 (1977) provides, "It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." For mistake of fact to be a valid defense, three elements must be satisfied: (1) the mistake must be honest and reasonable; (2) the mistake must be about a matter of fact; and (3) the mistake must negate the culpability required to commit the crime. Nolan v. State, 863 N.E.2d 398, 404 (Ind. Ct. App. 2007), trans. denied.

To support his mistake of fact defense, Norman points to his own testimony. Norman testified that he met "Lacy" at a downtown "drum circle." Tr. p. 86. He thought she was a nurse because "she was in a nurse's outfit and everything." Id. While they

---

[1] The charging information also cited the accomplice liability statute, thus including liability under the theory that Norman knowingly or intentionally aided, induced, or caused another person to commit the offense. See Ind. Code § 35-41-2-4 (1977).

5

smoked marijuana together, they talked about pills. Norman said he could buy pills "for six, seven dollars in the street." Id. at 87. "Lacy" said she could talk to a doctor and get him a prescription. After the prescription was called in, she had Norman call to confirm it. She then took him to Kmart, gave him money, and told him they would split the pills.

> When finding Norman guilty, the court stated that his testimony was not credible:

> I found this idea that you were smoking weed with someone who you believed to be a nurse, and this woman that you were smoking weed with was going to legitimately get you pills and then split them with you to be incredible. I found it to be incredible. I did not believe your testimony.

Id. at 102. We may not disturb this credibility determination on appeal. In any event, we agree with the State that, under the facts presented by Norman, any belief that "Lacy" was a nurse who could give him a valid Vicodin prescription was unreasonable.

Norman also argues there is no evidence of fraud, deceit, misrepresentation, or subterfuge and cites Schroer v. State, 159 Ind. App. 522, 307 N.E.2d 887 (1974). There, an unidentified customer submitted a written prescription to a pharmacy and received a call slip in return. The pharmacist believed the prescription was forged, confirmed this fact by calling the office of the doctor whose name was on the prescription, and notified the police. When the number on the call slip was announced, the defendant stepped to the counter and presented the call slip. He was subsequently arrested.

This Court noted it could be reasonably inferred that the defendant was acting in concert with the customer who submitted the written prescription and that he knew the prescription was forged. Thus, because the defendant represented he was entitled to the

drug when he presented the call slip, the evidence was sufficient to sustain his conviction for attempting to obtain a dangerous drug by misrepresentation or subterfuge. Id. at 889.

Norman claims the presentation of the call slip in Schroer distinguishes it from the instant case. He claims he never represented he was entitled to the Vicodin prescription and says the fact that he called the pharmacy in advance shows he was unsure of whether he was entitled to the drug.

We disagree. Schroer is instructive. As in Schroer, it can be reasonably inferred that Norman knew the Vicodin prescription was fraudulent and that he was acting in concert with the woman who called it in. He represented he was entitled to the drug when he both called the pharmacy to confirm it and asked for the prescription at the pharmacy counter.

We therefore conclude there is ample evidence to sustain Norman's conviction.

## II. COURT'S REFERENCE TO PRIOR CRIMINAL HISTORY

Norman next contends the trial court's reference to his prior criminal history constitutes fundamental error. The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. Delarosa v. State, 938 N.E.2d 690, 694 (Ind. 2010). The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. Id. This exception is available only in egregious circumstances. Id.

Norman points to the court's verification at the start of trial that the court had sentenced him before and that the case was "not [his] first time at the rodeo." Tr. p. 10. Norman argues he was entitled to notice that the court was going to reference his prior convictions and cites Indiana Evidence Rule 609, which allows evidence of certain convictions for the purpose of attacking a witness's credibility but prohibits evidence of stale convictions unless the proponent gives the adverse party sufficient advance written notice of intent to use such evidence so that the adverse party has a fair opportunity to contest its use. Although Norman acknowledges the reference to his criminal history came from the court and not the State, he argues he "was provided with no opportunity to question the Trial Court on its reference to or reliance upon Mr. Norman's past convictions, if any." Appellant's Br. p. 10.

First, Evidence Rule 609 simply does not apply here because the trial court's comments were not evidence, much less evidence put forth by the State. Second, the comments were made only to verify that Norman understood he had previously waived his right to a jury trial and was proceeding to a bench trial. Third, any claim that the court used Norman's prior criminal history to judge his credibility is pure speculation. There is absolutely nothing in the record to support such a claim. Indeed, at the end of the trial, the court thoughtfully summarized the evidence and explained why that evidence led the court to find him guilty beyond a reasonable doubt. See Tr. pp. 100-02. As to his credibility, the court plainly found his testimony unbelievable that a marijuana-smoking nurse offered to get him a valid prescription for extra strength Vicodin and wanted to split the pills with him. There is no error, fundamental or otherwise.

8

We therefore affirm the trial court's judgment.

MATHIAS, J., and BRADFORD, J., concur.