## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Joanna L. Green
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Juan Lucio,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

March 6, 2015

Court of Appeals Cause No.
29A02-1407-PC-484

Appeal from the Hamilton Superior Court

The Honorable Steven R. Nation, Judge

Cause No. 29D01-1006-PC-64

**Najam, Judge.**

## Statement of the Case

Juan C. Lucio appeals the post-conviction court's denial of his amended petition for post-conviction relief. Lucio presents two issues for our review,

namely, whether he was denied the effective assistance of trial and appellate counsel. We affirm.

## Facts and Procedural History

[2] The facts underlying Lucio's convictions for two counts of murder and one count of conspiracy to commit murder were set out in his direct appeal:

> The trial evidence favorable to the verdict indicated that the defendant was recruited by Toby Payne to kill Payne's estranged wife Rebecca Payne, and her boyfriend, George Benner. Toby had given the defendant a key to Rebecca's house and a map, and promised him $100,000 from a life insurance policy in return for the killing. The defendant, in turn, recruited Kyle Duckworth to drive him to Rebecca's house in exchange for $200 or a quarter-pound of marijuana. Originally, the defendant planned to be the shooter, but later changed his mind and recruited Anthony Delarosa to be the triggerman. On April 2, 2007, Duckworth drove the defendant and Delarosa to Rebecca's house. The defendant gave Delarosa a gun, and Delarosa entered the house but returned and said that Rebecca was not home. The men agreed to try again later. On April 4, the defendant called Duckworth to pick him up, called Delarosa to ask if he was ready, and called Toby Payne to inform him they were trying again. The three men drove to Rebecca's home, the defendant again gave Delarosa a gun, and Delarosa entered the house and fired the fatal shots. When police had questioned him during their investigation, the defendant first admitted that Toby Payne had given him a key to the house and asked him to kill Rebecca, but later claimed that they were supposed to scare Rebecca and extort money from her, that Delarosa told him where to go, that he did not know Delarosa had a gun, that he did not know why Delarosa was extorting money from her, and that he and Duckworth were supposed to get $200 each for driving.

* * *

> At the conclusion of all the evidence [presented at the ensuing trial], the jury was instructed on vicarious criminal liability.[ ] It found the defendant guilty on all three counts. In the subsequent penalty phase proceeding, the jury determined that the State had proved two charged aggravating circumstances—murder for hire and multiple killings, Ind. Code §§ 35-50-2-9(b)(4), (b)(8)— beyond a reasonable doubt, found that the aggravators outweighed the mitigators, and recommended that the defendant be sentenced to life in prison without parole. The trial court, following the jury's recommendation, sentenced the defendant to life without parole for the murder counts and imposed a fifty-year term for the conspiracy count, all sentences to run consecutively.

*Lucio v. State*, 907 N.E.2d 1008, 1009-10 (Ind. 2009) ("*Lucio I*"). Lucio raised a single issue on direct appeal, namely, whether the trial court erred when it denied his motion for mistrial following allegedly improper testimony by a witness. Our supreme court affirmed Lucio's convictions. *Id.*

[3] Lucio subsequently filed a petition for post-conviction relief and amended petitions. Following a hearing, the post-conviction court denied Lucio's final amended petition. This appeal ensued.

## Discussion and Decision

[4] Lucio appeals the post-conviction court's denial of his final amended petition for post-conviction relief. Our standard of review is clear:

> [The petitioner] bore the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. See Ind. Post-Conviction Rule 1(5); *Timberlake v. State*, 753 N.E.2d

591, 597 (Ind. 2001). Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. *Timberlake*, 753 N.E.2d at 597. Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. *Id.* If an issue was known and available, but not raised on direct appeal, it is waived. *Id.* If it was raised on appeal, but decided adversely, it is res judicata. *Id.*

In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. *Id.* at 468-69. Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues [the petitioner] must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *See Timberlake*, 753 N.E.2d at 597. We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court. *Id.*

*Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*.

[5] When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Overstreet v. State*, 877 N.E.2d 144, 151 (Ind. 2007) (citation omitted). To prevail from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* (citation omitted). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). "Although we do not defer to the post-

conviction court's legal conclusions, '[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made.'" *Id.* (citation omitted).

Lucio contends that he was denied the effective assistance of trial and appellate counsel in violation of the Sixth Amendment to the United States Constitution. A claim of ineffective assistance of counsel must satisfy two components. *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687-88. Second, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

### Issue One: Effective Assistance of Trial Counsel

Lucio first contends that he was denied the effective assistance of trial counsel. Specifically, Lucio argues that his trial counsel failed to: (1) object to the addition of the conspiracy to commit murder charge after the omnibus date; (2) object to the State's request, two weeks prior to trial, that Lucio be sentenced to life imprisonment without parole; (3) object to allegedly prejudicial comments made by the prosecutor during voir dire and at trial; (4) tender an instruction during the penalty phase; and (5) investigate and argue mitigation at the penalty phase. We consider each contention in turn.

[8]     Lucio first contends that his trial counsel's performance was deficient when, five months after the omnibus date, he did not object to the State's amendment of the charging information to add conspiracy to commit murder. Lucio maintains that he was prejudiced by that amendment "because it opened the door to evidence otherwise inadmissible." Appellant's Br. at 23. In particular, Lucio contends that "Duckworth's testimony repeating Delarosa's graphic description of the crime was hearsay but admissible as comments made in furtherance of a conspiracy." *Id.* And he contends that "Duckworth's girlfriend was then allowed to repeat Delarosa's recitation of the crime as told to her by Duckworth. This hearsay also would not have been admissible without the conspiracy charge." *Id.* Finally, Lucio asserts that the testimony of Randall Andrews, who testified that Payne had asked for cash when Andrews offered him a check to help pay for his divorce, was hearsay that was admissible "through the conspiracy charge." *Id.*

[9]     Indiana Code Section 35-34-1-5(b) provides in relevant part that the prosecuting attorney may amend an information in matters of substance, upon giving written notice to the defendant at any time before the commencement of trial, if the amendment does not prejudice the substantial rights of the defendant.

> A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights. Ultimately, the question is whether the defendant had a

reasonable opportunity to prepare for and defend against the charges.

*Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009) (citations and internal quotations omitted), *trans. denied*.

[10] Again, Lucio contends that the late amendment affected his substantial rights because otherwise inadmissible hearsay was admitted to prove the conspiracy charge. But, as the State points out, the amendment was made following a hearing on the motion to amend and a motion to continue trial. At that hearing, Lucio was present and represented by Henke, who indicated that, after discussing the issue, "he did not believe he had a legal objection" to the amendment. Appellant's App. at 248. And the trial court asked Lucio whether he waived a reading of the amended information, and Lucio responded, "Yes." *Id.* The State also moved to continue the trial. The trial court granted that motion and rescheduled the trial for January 7, 2008, which gave Lucio more than one month to prepare a defense for the new charge. On appeal, Lucio does not explain how he would have prepared his defense differently had he had more time. We cannot say that Lucio's substantial rights were affected by the amendment.

[11] Finally, and moreover, Lucio's contention that the testimony relevant to the conspiracy charge would have been inadmissible hearsay absent the addition of that charge is without merit. Our supreme court has observed that, "consistent with Federal Rule of Evidence 801(d)(2)(E), [Indiana Rule of Evidence 801(d)(2)(E), which provides that a statement is not hearsay if it was made by a

party's coconspirator during and in furtherance of the conspiracy,] 'applies not only to conspiracies but also to joint ventures, and that a charge of criminal conspiracy is not required to invoke the evidentiary rule.'" *Francis v. State*, 758 N.E.2d 528, 533 n.5 (Ind. 2001) (quoting *United States v. Kelley*, 864 F.2d 569, 573 (7th Cir.1989)). Here, Delarosa and Payne were coconspirators with Lucio, and the testimony regarding their statements relevant to the conspiracy, as set out above, would have been admissible whether the State had amended the information or not. *See id.* (holding evidence sufficient to show existence of conspiracy to permit testimony under Evidence Rule 801(d)(2)(E); defendant was not charged with conspiracy). Lucio has not demonstrated that he suffered any prejudice as a result of Henke's failure to object to the amended information.

*Life Without Parole*

[12] Lucio next contends that Henke was ineffective when he did not object to the State's request that Lucio be sentenced to life without parole ("LWOP"). In particular, Lucio maintains that "[t]he belated filing of the request for life without parole[, made approximately two weeks prior to trial,] forced Lucio to waive his right to a speedy trial." Appellant's Br. at 23. But, in the context of a similar argument, our supreme court has held that the filing of a death penalty request was timely when it was filed three days after the omnibus date and one week before trial. *See Lowrimore v. State*, 728 N.E.2d 860, 866 (Ind. 2000). Lucio has not demonstrated that, had Henke objected to the LWOP request, the trial court would have sustained that objection. *See Wrinkles v. State*, 749

N.E.2d 1179, 1197 (Ind. 2001) (holding no showing counsel ineffective where appellant did not prove that objection would have been sustained). Henke was not ineffective when he did not object to the State's LWOP request.

*Prosecutor's Comments*

[13] Lucio contends that Henke was ineffective when he did not object to comments the prosecutor made during voir dire and closing argument. In particular, during voir dire, the prosecutor answered a juror's question as follows:

> You mean the potential sentence, life without parole? It does mean what it says, yes. And basically, should we get a conviction in the first phase of the trial, then we have a second phase of the trial where we present information to you and we ask that you consider recommending life without parole. Now, understand one thing, *it's still the Judge's responsibility to sentence the defendant. It would be purely a recommendation* one way or the other, and you would have to be presented with sufficient evidence to convince you of the type of recommendation that you would want to make. Okay?

Trial Tr. at 77 (emphasis added). Citing *Caldwell v. Mississippi*, 472 U.S. 320 (1985), Lucio maintains that these comments "impermissibly minimized the jury's role in sentencing leaving it with the impression they could vote for life without parole and the judge could decide otherwise." Appellant's Br. at 25. And he asserts that the "misimpression that sentencing responsibility rests elsewhere may bias a jury to impose the harshest sentence in order to obtain that review or to 'send a message.'" *Id.* (quoting *Caldwell*, 472 U.S. at 331). In

sum, Lucio contends that the prosecutor misstated the law and that Henke was ineffective when he made no corresponding objection.

[14] The State concedes that the prosecutor's comments during voir dire were "confusing" and "did not provide a fully accurate expression of Indiana law on this matter." Appellee's Br. at 29. The State points out that, once a jury reaches a sentencing recommendation in a LWOP case, Indiana Code Section 35-50-2-9(e) requires the trial court to "sentence the defendant accordingly." But, despite the prosecutor's misrepresentation to the prospective jurors during voir dire, Lucio cannot show that he was prejudiced by Henke's failure to object to those comments. During the penalty phase, which was conducted several days after voir dire, the prosecutor told the jurors that they would be deliberating "to decide whether or not the actions of this defendant . . . deserve the sentence of life without parole." Trial Tr. at 796. And the prosecutor told the jurors that "the Judge must follow your recommendations." *Id.* Moreover, the trial court instructed the jurors that "[t]he law requires that your sentencing recommendation must be followed by the Judge." Direct Appeal App. at 424. Lucio has not shown that he was prejudiced by the prosecutor's comments during voir dire. *See, e.g., Hudgins v. State*, 451 N.E.2d 1087, 1091 (Ind. 1983) (holding that any misstatements of law during closing argument are presumed cured by final instruction).

[15] Lucio also contends that Henke should have objected to the following statement by the prosecutor, made during closing argument: "[Lucio] reveled in hearing the details of the murders on the way home, the details not as

described by him [at trial], the details as described in graphic detail by Kyle Duckworth when he took the stand." Trial Tr. at 751. Lucio maintains that "[t]here was no evidence to support this accusation." Appellant's Br. at 26. And Lucio asserts that, had Henke objected, "the objection would have been sustained because it is improper for a prosecutor to argue facts not in evidence." Appellant's Br. at 27 (citing *Neville v. State*, 976 N.E.2d 1252, 1261 (Ind. Ct. App. 2012), *trans. denied*). Lucio argues that he was "harmed by this unsubstantiated characterization, particularly because it was argued to the jury who would be deciding his sentence." *Id.*

[16] But the post-conviction court found as follows:

> Given all of the evidence in this case, it is a reasonable comment on the evidence. Generally, attorneys on both sides are permitted to argue both facts and reasonable inferences from the evidence or lack of evidence on a particular point. The Petitioner has not met his burden showing that this comment is fundamental error and, even if it w[ere], that [it] subjected the Petitioner to grave peril and had a probable persuasive effect on the jury's decision.

Appellant's App. at 282. The State agrees with the post-conviction court and points out that, because there is no evidence that Lucio objected to Duckworth's explicit description of the murders, it is reasonable to infer that Lucio reveled in that description.

[17] We need not decide whether the challenged comment was improper because Lucio has not shown that the prosecutor's comment subjected Lucio to grave

peril. Given the substantial evidence of Lucio's guilt, the prosecutor's commentary is unlikely to have affected the jury's deliberations. *See, e.g., Williams v. State*, 724 N.E.2d 1070, 1081-82 (Ind. 2000).

[18] Lucio also contends that Henke should have objected to the State's argument "that the key found in [Tara] Cassada's car[1] was the master key from which the key found at Delarosa's was made." Appellant's Br. at 27. Lucio maintains that that "allegation is unsupported by the evidence at trial" and prejudiced him "because the State used this suggestion to support its argument Lucio was the ringleader and Delarosa would not have had a key to the house without Lucio's participation." *Id.* But the evidence shows that police found "recently cut keys" to the victim's house in the possession of Delarosa and Lucio. Trial Tr. at 535. And police found a key in the visor pocket of a car belonging to Tara Cassada and Lucio. That key had the same cut as the two recently-cut keys, but it "appear[ed] to have some age to it. It[ appeared to be] worn, dirty like it's possibly an original type key." *Id.* at 534. Thus, the evidence supports a reasonable inference that Lucio had a key to the victim's house that was used to make the copies. Lucio cannot show that he was prejudiced by Henke's failure to object to that argument.

---

[1] Cassada was Lucio's girlfriend at the time of the murders.

*Jury Instruction*

[19]     Lucio contends that Henke was ineffective when, during the penalty phase, he did not "tender an instruction limiting consideration of guilt phase evidence to evidence relevant to statutory aggravators and mitigators." Appellant's Br. at 21. Lucio maintains that two of the instructions given during the penalty phase, namely, instructions numbered 4 and 6, "taken together, are contradictory and confusing." *Id.* at 20. "Phase II Preliminary Instruction No. 4" reads as follows:

> In the second phase of the trial the attorneys will again have an opportunity to make opening and final statements.
>
> *You may consider all the evidence introduced during the first phase of the trial in determining your recommendation.* Do not consider any offered evidence that the Court did not allow into evidence or that the Court ordered stricken from the record. In fact, such matters are to be treated as if you had never heard of them.
>
> You have previously been instructed by me as to the rules of law regarding the burden of proof, credibility of witnesses, and the manner of weighing the evidence which you will hear in this case. You have also been instructed as to definitions. Those rules and definitions also apply in this second phase of the trial.

Direct Appeal App. at 374 (emphasis added). "Phase II Preliminary Instruction No. 6" reads as follows: "You are not permitted to consider any circumstances as weighing in favor of the sentence of life imprisonment without parole other

than those specifically charged by the State of Indiana in the Charging Information." *Id.* at 376.

[20] Lucio acknowledges that Instruction 4 is a pattern jury instruction, but he asserts that the instruction was "wrong because jurors are prohibited from considering non-statutory, uncharged aggravators in determining whether a defendant should be sentenced to life without parole." Appellant's Br. at 20 (citing *Bivins v. State*, 642 N.E.2d 928, 955 (Ind. 1994)). But our supreme court has explicitly "approved the incorporation of all the trial evidence for penalty phase consideration," and it has held that trial counsel is not ineffective "for failing to challenge the trial court's instruction of the jury to consider all guilt phase evidence at the penalty phase." *Matheny v. State*, 688 N.E.2d 883, 902 (Ind. 1997) (citing *Smith v. State*, 475 N.E.2d 1139 (Ind. 1985)). Lucio has not shown that Henke was ineffective when he did not tender an instruction limiting consideration of guilt phase evidence to evidence relevant to statutory aggravators and mitigators.

*Mitigation Evidence*

[21] Lucio contends that Henke was ineffective when he did not conduct an adequate investigation into evidence relevant to sentence mitigation. Lucio also contends that Henke was ineffective when he did not present any mitigation evidence at the penalty phase. Lucio maintains that

> [t]rial counsel should have presented evidence of Lucio's loving yet dysfunctional family, including their lives as migrant workers, the lack of discipline in the home and the tragic death of Lucio's

young cousin [when Lucio was ten years old]. Had trial counsel presented Lucio's family's testimony and the testimony of experts like Drs. Thompkins and Smith[2] to explain the effect of these life events on Lucio, there is a reasonable probability of a different outcome.

Appellant's Br. at 18. But the evidence shows that Henke conducted a thorough investigation of Lucio's background in the hopes of coming up with mitigating evidence. And at the hearing on Lucio's petition for post-conviction relief, Henke explained his reasons for not presenting more of a defense at the penalty phase[3]:

> There was, and this was something that I had requested that my investigator Mr. Oberst do, [sic] would be to go check into Juan's background, mostly amongst family and people that he knew in Frankfort, which was where he was from. There was little positive information that he brought back to me that I felt was concrete and usable. There was a large quantity of negative information which would have been available to the State involving his prior criminal record, lack of employment, lack of education, in a lot of ways there was much that was unfavorable towards Juan that was available to the State that would have been triggered had an attempt been made to present favorable testimony on his behalf. I saw no way of presenting any evidence that I had to the jury that wouldn't have triggered that information that would have been far in excess outweighing it. I felt that instead that it was better to proceed with the evidence

---

[2] Dr. Martin Smith is a psychologist who assessed Lucio's mental health and diagnosed him as having anti-social personality disorder, unspecified trauma and stressor related disorder, and alcohol and cannabis dependence. Dr. Doug Thompkins is a criminologist "with specialties in gangs and prison re-entry." Appellant's Br. at 13. Dr. Thompkins concluded that, given his upbringing, Lucio lacked connections to "traditional institutions," which made him more likely to commit crimes. Post-Conviction Tr. at 304.

[3] Henke argued in mitigation that Lucio was a young man and was not the shooter.

that had been presented. His testimony as to his role in the proceedings and the fact that he was an accomplice rather than the actual trigger man for the murder.

Post-Conviction Tr. at 59-60. In sum, Henke made the strategic decision not to present mitigation evidence lest he open the door to evidence such as Lucio's membership with the "Latin Kings" gang from the age of eleven or twelve. Further, Lucio, who was twenty-four years old at the time of sentencing, has an extensive criminal history, including five juvenile adjudications and thirteen convictions, including four felony convictions, as an adult. As a juvenile, Lucio violated probation and Community Commitment placements, and, as an adult, Lucio has violated probation.

[22] The post-conviction court concluded that the testimony Lucio presented at the post-conviction hearing in support of his contention on the mitigation issue was "unpersuasive."[4] Appellant's App. at 264. And the post-conviction court concluded that Henke's decision not to present mitigating evidence was a reasonable strategy under the circumstances. We cannot say that those conclusions are clearly erroneous. *See Stephenson v. State*, 864 N.E.2d 1022, 1044-46 (Ind. 2007) (affirming post-conviction court's conclusion that trial

[4] Lucio makes much of the fact that, when he was ten years old, his young cousin hanged himself. Lucio maintains that the circumstances of the hanging were suspicious, and he suggests that police did not conduct an adequate investigation because of prejudice against people of his ethnic background. Lucio asserts that the impact of his cousin's death was significant and contributed to his life of crime. But Lucio had not mentioned this incident to Henke as a possible factor in mitigation, and Dr. Smith's conclusions regarding the impact of that event were equivocal, at best. Indeed, the evidence shows that Lucio's criminal activity began prior to that event. As the post-conviction court found, the evidence Lucio presented at the post-conviction hearing is inconsistent on these issues of possible mitigating evidence.

counsel's strategic decision to not present mitigating evidence "was not unreasonable in view of the considerable negative evidence that Stephenson's character evidence would have produced.") Henke conducted an adequate investigation into mitigating evidence and was not ineffective when he did not present mitigating evidence at the penalty phase.

### Issue Two: Effective Assistance of Appellate Counsel

We next consider Lucio's argument that he was denied the effective assistance of appellate counsel. In particular, he contends that his counsel on direct appeal was ineffective when he omitted allegedly meritorious issues from his brief on appeal. When we review claims of ineffective assistance of appellate counsel, we use the same standard applied to claims of ineffective assistance of trial counsel: the post-conviction petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for the deficient performance of counsel, the result of the proceeding would have been different. *Manzano v. State*, 12 N.E.3d 321, 329 (Ind. Ct. App. 2014) (citing *Harris v. State*, 861 N.E.2d 1182, 1186 (Ind. 2007)), *trans. denied*.

To show that counsel was ineffective for failing to raise an issue on appeal, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Id.* To evaluate the performance prong when counsel failed to raise issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are clearly stronger than the

raised issues. *Id.* If the analysis under this test demonstrates deficient performance, then we examine whether the issues which appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial. *Id.* at 329-30. Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id.* at 330.

*Victim Impact Testimony*

[25] Lucio first contends that his appellate counsel was ineffective when he did not raise as an issue on direct appeal the trial court's alleged error in admitting testimony that he alleges constituted impermissible victim impact testimony. In particular, Jim Benner, brother of George, one of the murder victims, testified that George was the oldest of six children and became a father-figure to his siblings at age ten after their father died. Jim testified that George taught him to shave and drive a car, and George stood up for Jim when he was bullied by other kids. Jim testified that George did "all the things that you would expect an older brother or a father to do." Trial Tr. at 422. Lucio's trial counsel objected, and the trial court sustained that objection. But the trial court then permitted a few questions regarding George's relationship with Rebecca, such as how they had met. The prosecutor also asked Jim about George's life, generally, including where he lived, went to school, his field of study, and his employment history.

[26] Victim impact testimony is not admissible in the sentencing phase of a capital trial if that testimony is irrelevant to the alleged aggravating factor. *Laux v. State*, 985 N.E.2d 739, 749 (Ind. Ct. App. 2013), *trans. denied*. Generally, victim impact evidence is evidence that demonstrates the consequences suffered by a victim or a victim's family as a result of a crime. *Id.* Error in the receipt of victim impact evidence is subject to harmless error analysis. *Id.*

[27] In *Laux*, we observed that the alleged victim impact testimony merely "revealed background information as to how the witnesses and the victim became acquainted and how they interacted[.]" 985 N.E.2d at 749. Thus, we held that, "[i]n short, this is not evidence that demonstrates the consequences suffered by a victim or a victim's family as a result of a crime." *Id.* (citation omitted). Likewise, here, Jim described how George and Rebecca met and gave background information about George's life, but Jim did not make any statements about the consequences suffered by George's family or friends as a result of the murders. *Cf. Bivins v. State*, 642 N.E.2d 928, 957 (Ind. 1994) (holding testimony constituted victim impact evidence where physically-disabled wife testified that she had "lost [her murdered husband's] companionship and his love, his protection and his care, as well as his friendship and his income[.]") We cannot say that this issue was clearly stronger than the issue appellate counsel raised on direct appeal. *Manzano*, 12 N.E.3d at 329. Again, ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct

appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id.* at 330.

[28] Moreover, in light of the substantial evidence of Lucio's guilt, any error in the admission of the alleged victim impact testimony would have been deemed harmless on appeal. *See Bivins*, 642 N.E.2d at 957. Lucio has not shown that, had his appellate counsel raised this issue on direct appeal, a different outcome would have resulted.

*Belated Amendment of Information*

[29] Lucio contends that, had his appellate counsel raised the issue of the State's addition of the conspiracy charge to the information five months after the omnibus date, the outcome of his direct appeal would have been different. But, as we address above, we hold that Lucio has not shown that the amendment prejudiced his substantial rights. Thus, Lucio cannot show ineffective assistance of appellate counsel on this issue.

*Penalty Phase Instructions*

[30] Lucio also contends that, had his appellate counsel raised the issue of Henke's decision not proffer an instruction to clarify what evidence the jury could consider in deliberating his sentence, the outcome of his appeal would have been different. But, again, our supreme court has explicitly "approved the incorporation of all the trial evidence for penalty phase consideration," and the trial court properly instructed the jury using pattern jury instructions. *See*

*Matheny*, 688 N.E.2d at 902. Lucio has not demonstrated that his appellate counsel was ineffective when he did not raise this issue on direct appeal.

*Insufficient Evidence*

[31] Finally, Lucio contends that his appellate counsel was ineffective when he did not argue that the State presented insufficient evidence to prove that the charged murders stemmed from a "murder for hire" scheme. Indiana Code Section 35-50-2-9(b)(4) provides that the State may seek an LWOP sentence if it proves as an aggravating circumstance that the defendant who committed the murder was hired to kill. Our standard of review for examining the sufficiency of the evidence to support a statutory aggravating circumstance is the same standard for determining the sufficiency of evidence to convict. *Krempetz v. State*, 872 N.E.2d 605, 609 (Ind. 2007).

[32] Had Lucio's appellate counsel raised this issue on direct appeal, it would not have been successful. Any argument would have constituted a request that we reweigh the evidence, which we will not do on appeal. At trial, Lucio's girlfriend testified that Payne asked Lucio to kill Rebecca and had offered to pay Lucio $100,000 from the proceeds of a life insurance policy for the murder. Lucio cannot show that his appellate counsel's performance was deficient.

*Conclusion*

[33]   Lucio has not demonstrated that he was denied the effective assistance of trial or appellate counsel.  The post-conviction court did not err when it denied his petition.

[34]   Affirmed.

[35]   Mathias, J., and Bradford, J., concur.