## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 25 2016, 7:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Charles D. Gilliam, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 25, 2016

Court of Appeals Case No.
71A03-1602-CR-356

Appeal from the St. Joseph
Superior Court

The Honorable Jane Woodward
Miller, Judge

Trial Court Cause No.
71D01-1507-F2-13

**Pyle, Judge.**

# Statement of the Case

[1] Charles Dwayne Gilliam, Jr. ("Gilliam") appeals his conviction for Level 2 felony robbery resulting in serious bodily injury.[1] On appeal, he argues that the State did not present sufficient evidence to support his conviction because his use of force that resulted in serious bodily injury occurred after he took his victim's property. Because we conclude that Gilliam's use of force occurred during his robbery, we affirm his conviction.

[2] We affirm.

# Issue

Whether there was sufficient evidence to support Gilliam's conviction.

# Facts

[3] On the evening of July 17, 2015, Alan Minyard ("Minyard") spent the night drinking alcohol at two different bars. Early in the morning on July 18, 2015, he exited the second bar in order to call a taxi to drive him home. At the time, he had approximately thirty dollars, his cell phone, and his cell phone charger in his possession.

[4] Lisa Armstrong ("Armstrong") was walking with a friend across the street from where Minyard was standing outside the bar when her friend told her that

---

[1] IND. CODE § 35-42-5-1(1).

"somebody just got hit." (Tr. 91). She looked across the street and saw Minyard with his hands up. A man, later identified as Gilliam, hit Minyard a second time, and Minyard fell down to the ground. Armstrong saw Gilliam go through Minyard's pockets and then start to walk away. However, he had only "walked a few steps," (Tr. 96), when Minyard started to move and "[sit] up a bit[.]" (Tr. 91). At that point, Gilliam returned to Minyard and hit him again. This time, Minyard fell back down to the ground and quit moving.

[5]     Armstrong called 9-1-1, and South Bend Police Department officers Alan Wiegand ("Officer Wiegand") and Kyle Dombrowski ("Officer Dombrowski") responded to the dispatch. Officer Wiegand arrived at the scene first and found Minyard on the ground, unconscious. Minyard's wallet was open on his chest, and his cell phone charger was at his feet. When Officer Wiegand attempted to wake Minyard, he initially could not do so, although Minyard eventually began to regain consciousness when the paramedics arrived. Even then, Minyard was mumbling and incoherent. The paramedics took Minyard to the hospital where doctors found that he had suffered multiple contusions, a non-displaced fracture of his left jaw,[2] and swelling of the tissues around his eye sockets. When Minyard woke up, he could not remember anything that had happened after he

---

[2] In a non-displaced fracture, "the bone cracks either part or all of the way through but does [not] move and maintains its proper alignment." (Tr. 70).

walked out of the bar to call the taxi. However, he discovered that he was missing some cash, his school ID card, and his cell phone.[3]

[6] In the meantime, Officer Dombrowski found Gilliam, who matched Armstrong's description of Minyard's attacker, walking down the street. He detained Gilliam and took him to the scene of the crime, where Armstrong verified that Gilliam was the person she had seen attack Minyard.

[7] Subsequently, the owner of the bar where Minyard had been attacked let the officers watch the bar's security surveillance footage. The surveillance camera had captured a portion of the attack, including Gilliam hovering over a prone Minyard for a period of time and eventually striking him. Officer Wiegand also called Minyard's missing phone. A female answered the phone and told the officer that she had bought the phone from a "male black [sic] by a McDonald's." (Tr. 66). There was a McDonalds just to the north of the bar where Minyard was attacked.

[8] On July 20, 2015, the State charged Gilliam with Level 2 felony robbery resulting in serious bodily injury—specifically, robbery resulting in Minyard's unconsciousness. The trial court held a jury trial on November 9, 2015. At the conclusion of the trial, the jury found Gilliam guilty as charged. Thereafter, the

---

[3] Minyard later acknowledged that he remembered giving a woman his cell phone to call a taxi, and he could not remember whether she had ever given it back.

trial court sentenced Gilliam to twenty (20) years executed in the Indiana Department of Correction. Gilliam now appeals.

## Decision

[9] On appeal, Gilliam argues that there was insufficient evidence to support his conviction for robbery resulting in serious bodily injury because he inflicted the serious bodily injury for which he was charged, Minyard's unconsciousness, after he took Minyard's belongings. In other words, Gilliam argues that he had already taken Minyard's belongings and completed the robbery prior to knocking Minyard unconscious and, thus, the serious bodily injury could not be used to support his conviction.

[10] When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We neither reweigh the evidence nor judge witness credibility. *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008). We will affirm a conviction if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

[11] In order to convict Gilliam of Level 2 felony robbery resulting in serious bodily injury, the State was required to prove that he "knowingly or intentionally [took] property from another person or from the presence of another person . . . by using or threating the use of force on any person" that "result[ed] in serious bodily injury to any person other than [Gilliam]." I.C. § 35-42-5-1(1). The

Indiana Code includes "bodily injury . . . that causes . . . unconsciousness" in its definition of "serious bodily injury." I.C. § 35-31.5-2-292(2).

[12] Contrary to Gilliam's assertions, our supreme court has held that a robbery is not complete until the property that is the subject of the robbery has been "carried away." *Krempetz v. State*, 872 N.E.2d 605, 610 (Ind. 2007). "[A]sportation—the carrying away of the property—continues as the perpetrators depart from the place where the property was seized." *Id.* In short, "when the robbery and the violence are so closely connected in point of time, place, and continuity of action, they constitute one continuous scheme or transaction." *Young v. State*, 725 N.E.2d 78, 81 (Ind. 2000) (holding that the defendant's "taking of property include[d] his actions in effecting his escape.")

[13] Gilliam argues that he caused Minyard's unconsciousness after he finished robbing him, rather than during the robbery. However, the State presented evidence that Gilliam's use of force was a continuous part of his robbery, both in terms of proximity to his removal of the items from Minyard, and in its purpose of effectuating his escape. Armstrong testified that Gilliam hit Minyard twice, causing him to fall to the ground, and then went through his pockets. Then, when Gilliam started to walk away, Minyard tried to sit up, and Gilliam hit him again—this time rendering Minyard unconscious. Armstrong clarified on cross-examination that that Gilliam had only "walked a few steps" before he hit Minyard this third time. (Tr. 96). In light of this evidence, it is clear that Gilliam never effectively carried Minyard's property away from the scene as he had only walked a few steps and was still close enough to see

Minyard try to sit up. His action in hitting Minyard once he started to sit up then effectuated his escape by preventing Minyard from following him or resisting the robbery. Thus, Gilliam's use of force was a continuing part of his robbery, and the State therefore presented sufficient evidence to convict him of robbery resulting in serious bodily injury.

[14] Affirmed.

Bradford, J., and Altice, J., concur.